**Homer S. DAVIS, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

No. 89–6428.

United States Court of Appeals, Sixth Circuit.

Argued July 27, 1990.

Decided Aug. 3, 1990.

Stephen A. Sanders, Prestonsburg, Ky., Janice B. Binder (argued), Appalachian Research & Defense Fund of Kentucky, Hazard, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Office of the U.S. Atty., Lexington, Ky., Carl V. Hill (argued), Office of the Gen. Counsel, Baltimore, Md., for defendant-appellee.

Before KENNEDY and MILBURN, Circuit Judges, and WEBER, District Judge *.

MILBURN, Circuit Judge.

Plaintiff-appellant Homer S. Davis appeals the district court's grant of summary judgment upholding the Secretary of Health and Human Services' denial of his application for Social Security disability insurance benefits. The parties agree that Davis cannot return to his past heavy, semi-skilled work. Davis, however, disputes the Secretary's determination that he can engage in a limited range of sedentary work. For the reasons that follow, we affirm.

## I.

### A.

Davis applied for benefits on April 29, 1985, alleging that he was disabled by a "herniated disc, hiatal hernia, breathing difficulties, sleep apnea, Reynauld Syndrome, [and an] enlarged liver." His application was denied initially and upon reconsideration. He requested a hearing, which

an administrative law judge ("ALJ") conducted on November 4, 1986.

On January 7, 1987, the ALJ filed a decision in which he recommended that Davis' application be denied. The ALJ found that Davis had "severe back pain" that prevented his return to his past work, but that he retained the functional capacity to engage in sedentary work. Davis then sought judicial review.

On May 3, 1988, the district court remanded the case to the Secretary with directions to reevaluate Davis' residual functional capacity. The district court was troubled that Davis' treating physician found him to be "permanently disabled," but that the Secretary produced no evidence to contradict that opinion.

On October 6, 1988, the ALJ conducted a second hearing. The ALJ considered a consulting physician's report on Davis' limitations, another report from the treating physician, and the testimony of a vocational expert, who was asked to consider Davis' residual functional capacity within the limitations set by both doctors. On October 28, 1988, the ALJ issued a decision in which he recommended that Davis' application be denied. The ALJ found that based upon the consulting physician's limitations, Davis could engage in a limited range of light work. In the alternative, he found that based upon the treating physician's limitations, Davis could engage in a limited range of sedentary work. On September 19, 1989, the district court found that the ALJ had properly assessed Davis' residual functional capacity, and granted summary judgment in favor of the Secretary.

### B.

Davis was born on August 19, 1938, and is a high school graduate. He last worked in May 1982, and his insured status expired in December 1987. His past relevant work includes heavy, semi-skilled work, and he was employed on an oil derrick when he felt that his back pain forced him to stop working. At this stage of the litigation,

---

* Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

Davis has abandoned his claims of disability from his alleged hiatal hernia, sleep apnea, Reynauld's Syndrome, and an enlarged liver. Thus, this appeal focuses on his back pain and alleged problems with anxiety.

Davis describes his back pain as a dull ache that originates in his lower back and extends down his left leg, sometimes to his toes. He testified that he cannot walk more than two blocks without feeling severe pain in his back and legs, and that he feels severe pain when he bends, stoops, or squats. He testified that he believed that he could carry a weight of twenty-five pounds if it were handed to him, but that he could not lift it.

Dr. James VanHoose has been Davis' treating physician since 1985. In response to a medical questionnaire that he answered in 1986, Dr. VanHoose reported that Davis suffered from a herniated disc with pressure on the sciatic nerve due to protruding disc material, "hiatal hernia, gastro-esophageal reflux disorder, sleep apnea [and] chronic anxiety." In Dr. VanHoose's opinion, Davis was incapable of lifting more than five pounds, and he could not sit, stand, or walk for lengthy periods in an eight-hour day. Dr. VanHoose also opined that Davis was incapable of working foot controls, or working an eight-hour day, five days per week. Dr. VanHoose reported that Davis "is permanently and totally disabled for any type of gainful employment." Dr. VanHoose's opinion was supported only by a CT scan that showed lumbar spondylosis and a herniated disc. However, Dr. VanHoose's opinion as to Davis' being incapable of lifting more than five pounds is not supported by any objective medical tests or findings.

Davis was also examined by a psychologist, Dr. Shelle Dietrich. She reported that Davis had an average IQ. She also reported that based upon MMPI personality tests, Davis might have problems with resentfulness, irritability, moodiness, and argumentiveness, and that he could be "erratic and somewhat unpredictable." However, in response to a medical questionnaire, she reported that he had a "good" ability to work under supervision, with others, and with the public, and she did not believe him to be disabled by anxiety.

After remand, the Secretary sent Davis to Dr. Joseph Rapier, an orthopaedic specialist. He found Davis to be in "acute distress," and to suffer limited ranges of motion in his spine and legs. Dr. Rapier stated in response to a questionnaire that Davis could lift up to twenty-five pounds and fifteen pounds frequently. He concluded that Davis could stand or walk for two hours and sit for six hours during an eight-hour day. Dr. Rapier, however, did not include any objective medical data, test results, or any medical findings to support his prescribed limitations.

Davis also returned to Dr. VanHoose, who reported that Davis was capable of lifting up to five to eight pounds, and that he could stand and walk for two hours and sit for four hours during an eight-hour day. Like Dr. Rapier, however, Dr. VanHoose did not list any objective medical data, test results, or any medical findings to support his prescribed limitations.

In the second hearing, the ALJ reviewed Dr. Rapier's and Dr. VanHoose's opinions with a vocational expert. He then asked her a hypothetical question based upon Dr. Rapier's limitations. She testified that under those limitations, Davis could engage in light work. She described a number of light and sedentary jobs available in the regional economy, and testified that those jobs existed in significant numbers.

The ALJ then asked the vocational expert a hypothetical question based upon Dr. VanHoose's prescribed limitations. The vocational expert testified that based upon those limitations, Davis would be capable of performing forty-five percent of the range of sedentary jobs she had previously identified. She testified that he could do all the sedentary jobs she had already described—primarily cashier and clerking jobs—and that those jobs existed in significant numbers in the regional economy.

In his opinion, the ALJ listed under his "recommended findings" that Davis could engage in a range of light work. In his analysis, the ALJ added as an alternative

that even under Dr. VanHoose's limitations, Davis could engage in a limited range of sedentary work. The ALJ concluded that Davis was not disabled. The district court found that the ALJ's conclusion that Davis could do sedentary work was based upon substantial evidence.

## II.

■ The Secretary determined that Davis could not return to his past relevant work, and that determination shifted the burden to the Secretary to show by substantial evidence that Davis could perform work that exists in the national economy. *See Varley v. Secretary of Health & Human Serv.*, 820 F.2d 777, 779 (6th Cir.1987). Substantial evidence of a claimant's residual functional capacity may lie in the testimony of a vocational expert in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Id.* (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984)).

In this appeal, the Secretary all but abandons the ALJ's recommendation that Davis can perform light work, and for good reason. The only evidence that supports this conclusion is (1) Dr. Rapier's unsupported limitations, and (2) Davis' testimony that he could carry *but not lift* twenty-five pounds. This evidence is not substantial.

■ This appeal instead focuses on the ALJ's finding that Davis can perform a limited range of sedentary work. The Secretary asserts that substantial evidence to support this conclusion lies in the hypothetical question in which the ALJ asked the vocational expert to consider Davis' residual functional capacity under Dr. VanHoose's limitations. We agree, as this question accurately portrayed Davis' limitations as reported by his treating physician.

Most of Davis' arguments on appeal overlook that by adopting Dr. VanHoose's prescribed limitations, the ALJ indulged Davis by not requiring him to prove his disabilities and their resulting limitations. Rather, the ALJ asked the vocational expert to assume them to be true. Thus, all of Davis' arguments concerning the proper preference the ALJ should have given to Dr. VanHoose's opinion over Dr. Rapier's are moot.

■ Davis contends that the ALJ wrongfully denied his claim of disabling pain under *Duncan v. Secretary of Health & Human Serv.*, 801 F.2d 847, 852 (6th Cir.1986). This argument must fail, however, as Davis has waited until he reached this stage of litigation to begin asserting a claim of disabling pain. In addition, in using Dr. VanHoose's limitations, the ALJ incorporated into his hypothetical question the functional limitations prescribed by the treating physician, who was aware of Davis' pain over the preceding years in setting these limitations on Davis' physical abilities.

Davis argues that the ALJ ignored Dr. Dietrich's prescribed limitations. Dr. Dietrich, however, found that Davis is not disabled by anxiety and is capable of making the adjustments required to work under supervision, with others, and with the public.

■ Davis also points out that under Dr. VanHoose's limitations, he may sit for only four hours and stand and walk for only two hours, for a total of six hours. He argues that to be found capable of working, he must be found capable of working an eight-hour day. This argument is groundless, as the Secretary's regulations regard part-time work as a "substantial work activity." *See* 20 C.F.R. § 404.1572(a) (1989).

## III.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.